WILLIAMS, Senior Circuit Judge,
concurring in the certification to the Supreme Court of California.
I write separately to underscore what the decision does not hold and to explain where I depart from the majority’s reasoning. First, as Maj. Op. at 244 n.* observes, we take no position on whether a firm connected to a labor dispute or relationship only by virtue of being the landlord of a firm (Robinsons-May) that advertises with the disputing employer (the San Diego Union-Tribune) is subject to the duties (vis-á-vis a union seeking to handbill against the Union-Tribune) that the National Labor Relations Act (“NLRA”) imposes on “employers” with respect to their own employees (and unions seeking to represent them). Fashion Valley raised no such issue.
Second, the Board found that, assuming that Rule 5.6.2 violated California law, Fashion Valley had violated § 8(a)(1) both “by maintaining” Rule 5.6.2, Equitable Life Assur. Soc’y of the United States, et al., 343 N.L.R.B. No. 57 at 2 (Oct. 29, 2004), and “by enforcing” the rule, id. Fashion Valley didn’t challenge the Board’s “maintenance” finding; thus we reach no holding on that issue, and the question of California constitutional law is properly before us (and in turn certified).
But Fashion Valley did challenge the Board’s conclusion that it (Fashion Valley) violated § 8(a)(1) “by enforcing Rule 5.6.2, i.e., by requiring the instant application for a permit,” id. (emphasis added), and I cannot agree with the court’s reliance on that finding — reliance that appears quite unnecessary in view of the Board’s unchallenged “maintenance” conclusion. I see three problems with the majority’s enforcement analysis. First, the union’s proposed leafleting didn’t run afoul of Rule 5.6.2. Although the Board incorporated the ALJ’s finding that “the Union’s October 4 leafleting had, as its primary object, a consumer boycott of the Mall’s Robin-sons-May store,” id. at 1, 7, the majority correctly reverses that finding. See Maj. Op. at 244 (agreeing with Fashion Valley’s contention “that there is not substantial evidence the Union intended to boycott any of the Mali’s tenants,” id. at 6). It is hard to see how a firm can “enforce” a rule in an episode to which the rule is irrelevant.
Having removed the factual support from the Board’s position, the court goes on to affirm on different grounds, disregarding the familiar principles of Securities and Exchange Comm’n v. Chenery Corp., 318 U.S. 80, 87-88, 63 S.Ct. 454, 87 L.Ed. 626 (1943). The court says that “Fashion Valley interfered with the employees’ rights” by “subjecting the Union to a permit process that required [the Union] to forswear use of a lawful tactic.” Maj. Op. at 244. This evidently rests on the Board’s conclusion that “inasmuch as the application process requires adherence to an unlawful rule, [Fashion Valley] may not enforce it.” 343 N.L.R.B. No. 57 at 2 (emphasis added). The referent for the word “it” is unclear. The majority reads “it” as the application process. Thus, under the majority’s reading, a firm imposing an application requirement “enforces” all of its rules (at least ones that a successful applicant must pledge to obey) anytime that it insists on an application. The majority thus eviscerates much of the distinction between enforcement and mainte *248 nance. Fashion Valley maintained Rule 5.6.2, but in no way enforced it.
Alternatively, “it” may refer to Rule 5.6.2. This seems more likely, in view of the Board’s finding that the union intended a boycott (which we now reverse), and its later reference to Fashion Valley’s “enforcing Rule 5.6.2.” Id. On this reading, of course, the Board’s analysis would founder for want of factual support.
Second, the majority’s enforcement theory is further marred by the union’s complete unawareness (on the date of the supposed “enforcement”) of the very existence of Rule 5.6.2 or its content. The evidence suggests that Fashion Valley excluded the union on October 4 simply because the union refused to apply for a permit, not because Fashion Valley “enforced” Rule 5.6.2 in any non-metaphysical way.
Lastly, the majority notes that under Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 583-87, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988), nothing in the NLRA barred the union from carrying out a secondary boycott by peaceful handbilling. Maj. Op. at 244. True. But of course that tells us little or nothing about the possible affirmative duties of parties subjected to secondary boycotts.
In sum, the majority stretches ordinary language (and the case law) too far — and substitutes its own reasoning for the Board’s — in concluding that when a company conditions leafleting on submission of an application it automatically “enforces” any rule (that a successful applicant would be required to obey) against persons who have neither contemplated conduct that might violate the rule nor learned of the rule’s existence.